## WORK AND LABOR.

3 Dec.
136

[Lucas Circuit Court, February 16, 1895]

THE TOLEDO ANN ARBOR AND NORTH MICHIGAN RAILWAY COMPANY v. SHERMAN W. LOTT.

AGREEMENT AUTHORIZING EMPLOYER TO FIX COMPENSATION.

While an agreement might be made permitting an employer to say at the end of the service of an employee what the services are worth, such an agreement cannot be enforced where the employer fails or refuses to exercise his right to fix the compensation in good faith, at the time named in the contract, or when called upon by the employee to do so.

KING, J.

This is a petition in error to reverse the judgment of the court of common pleas. It seems that some time in 1892 the Toledo, Ann Arbor and North Michigan Railway company, through its officers and manager, conceived the idea of acquiring some real estate, I presume for the purpose of adding to the terminal facilites which it already had, or to provide others, and between its officers and Sherman W. Lott there were some negotiations about his acting for them in endeavoring to secure the purchase of certain property, which is disclosed in the evidence. The agreement, or arrangement, whatever it was, to pay Mr. Lott, they didn't carry out, and he was compelled to bring this action, and in his petition he sets out that the railroad company is indebted to him in the sum of $1,463.25, with interest from December 14, 1892, on account of services which he rendered to them in the following respects, to wit: the purchase at different dates of different parcels of property, which he sets forth and describes in detail, with the sum opposite each one which he avers his services were reasonably worth, and no part of which he says has been paid.

The defendant company answer this petition and deny that there was due to the plaintiff $1,463.25 or any amount in excess of $300, which the defendant alleges is ample and reasonable compensation for all services ever rendered by the plaintiff for the defendant.

Defendant denies that said account is a just and true account of services rendered by the plaintiff to the defendant, as set forth in the petition, and denies all the allegations of the petition not herein expressly admitted to be true.

For a second defense this defendant says " that the only contract and agreement entered into by and between the defendant and the plaintiff for services mentioned in said account, was entered into on or about the —— day of —————— by and between the plaintiff and H. W. Ashley, Esq., general manager of said defendant company, acting for said company; that by the terms of said agreement it was agreed and understood that plaintiff should receive as full compensation for the services to be rendered by him thereunder, such sum as said general manager should deem reasonable. That at the time of the completion of the services, and at the time of the beginning of this suit, the said general manager deemed the sum of $300 to be an adequate and reasonable compensation for such services. That the services set forth in the petition were all rendered by the plaintiff under the agreement aforesaid."

There was a demurrer interposed by the plaintiff to the second ground of defense, and overruled. The reply denied that $300 was an ample and reasonable compensation, and denied each and every allegation of the second defense. The case was tried to a jury, and a verdict rendered for the plaintiff at the September term, 1892, for the sum of $1,045.18.

On the trial certain evidence offered was objected to by the plaintiff below, and the objection sustained. The agreement which seems to be the contest between them is set forth in the bill of exceptions in very brief language, and is contained substantially in the testimony of S. W. Lott and H. W. Ashley,

general manager of the defendant company. I will read it. The plaintiff testified:

The first that I knew anything about this, that they wanted me to buy this property, was on the 19th day of September, a year ago this last September, 1892. I was going to the court house on business, and Mr. Ashley—James M. Ashley, Jr.—the vice-president of the road, met me on Superior street, right opposite Armstrong & Clarke's wholesale grocery store. We talked a little about different matters; then he spoke about the purchase of this property, and said that the park commissioners were going to condemn the property along the river, and that they would probably have to change their terminal. He said he wanted me to purchase this property for them, and wanted me to go along with him to Pythian Castle and see his brother, Henry W. Ashley, who was the general manager.

Q. State fully what took place in that conversation between James M. Ashley, Jr., and yourself before you went to the office. A. I was coming to that. I told him I had to go to the court house. He said, " We will walk up that way and then go to Pythian Castle." We did, and in that conversation he said that there was between $60,000 and $70,000 worth of property to be purchased, and he didn't want anybody to know anything about it except myself. He said he didn't want any real estate men to have anything to do with it, or any one connected with the road, or their attorney. He said there was between $60,000 and $70,000 worth of property, and. if people found out that the railroad company wanted to purchase it, it would cost them $100,000. I told him I didn't hardly know whether I was able to the task, and I asked Mr. Ashley if I couldn't let Judge Cummings into the secret, as I was reading under him—reading law under him—and that I should want some one to help look after the titles. Mr. Ashley spoke about looking after the titles. I asked him if I couldn't let Judge Cummings into the secret—he knew I was reading law under Judge Cummings. He said no, he didn't want anybody to know anything about it. I said, " All right, then you can rely upon me." He said he knew he could do that; that he hadn't known me very long, but he had studied me in that time, and knew I was one he could rely on. I told him he could do that. By that time we got to the Castle, and he introduced me to his brother, Harry W. Ashley. He was the general manager.

Q. State fully what was said between you and Mr. Ashley on the subject of compensation for yourself. A. He asked me what I wanted for my services, and I told him I didn't know what I could do at that time; that I wanted simply what was fair and reasonable, and was willing to take what he thought was fair and reasonable. He said, " All right, we will leave it that way." He said, " Go ahead, and in case you make good purchases I will pay you liberally, and more than otherwise. At any rate, I will pay you more than your time and services are worth at your office." I said " All right," and that was all that was said on that subject, as near as I can tell.

There was a little more evidence given as to the value of these services. Henry W. Ashley was called and testified " that he was the general manager of the defendant company, and that he made personally on behalf of said company the agreement with the plaintiff for the rendering of the services testified to by the plaintiff, and that said agreement was that the plaintiff should receive as compensation for his services such sum as he, the said Ashley, should deem fair and reasonable therefor, though he would not deny the correctness of Mr. Lott's statement as to the conversation on the subject of the compensation as heretofore set forth in Mr. Lott's testimony." That is the testimony about the agreement, and all the testimony that is disclosed in the bill of exceptions relating to the agreement.

Then Mr. Henry W. Ashley, while a witness, was asked this question:

You may state to the jury what you deemed a reasonable and fair compensation to be paid to the plaintiff for his services at the time he discontinued his work.

This was objected to and the objection was sustained and several other questions were asked of the same nature. The attorney for the defendant company, disclaiming any intention on his part to make Mr. Ashley an expert, or to qualify him as such, or to have him qualify generally as to his opinion of the value of such services, only desired to get at what he deemed at the time of the rendition of the services, or when they were completed, was a fair and reasonable compensation to be paid to the plaintiff; and all questions that went to that were objected to, and the objections sustained. To that defendant excepted. The bill of exceptions further says that "The court said to defendant's counsel that if, after the performance of the services, Mr. Ashley made an estimate of their value, and stated it to the plaintiff, evidence of the same might be given." And the plaintiff by his attorney offered to permit Mr. Ashley to testify as an expert, if he would qualify as such, which the attorney for the defendant declined to have him do, for the reason that he desired to raise the question of his right to answer as the sole arbiter under the contract. The court also said "If Mr. Ashley could qualify as an expert, he might give his opinion of the value of the services."

Thereupon testimony was offered by defendant tending to show that in a conversation between Mr. Lott and Mr. Ashley at about the time of the conclusion of the services of Mr. Lott, said Lott demanded $1,000 as compensation for his said services. But there was no testimony tending to show that Mr. Ashley stated to Mr. Lott, prior to the bringing of this suit, what sum he, said Ashley, deemed a fair and reasonable compensation for said services.

Thereupon the defendant rested and offered no further proof, and asked the court to charge certain things to the jury, which the court refused but all bearing on the same point and put for the same purpose, to wit: that the court should instruct the jury that under the agreement as shown by the testimony of Mr. Ashley (and his testimony, by the way, does not vary substantially from that of Mr. Lott), he would have the right to determine and name the sum as a witness that was fair and reasonable; and it was on that point that the court ruled out the opinion of Mr. Ashley as to what he deemed at the time of the rendition of the services they would be reasonably worth—based on the ground that the contract was a contract to pay in fact what was fair and reasonable. The plaintiff in error claims in this the court of common pleas erred; that Mr. Ashley should have been allowed to testify on the trial, as a mere arbitrator; what amount of compensation Mr. Lott should receive—the sum which he deemed at the time of the rendition of the services, when they were concluded, was a fair and reasonable compensation. To the same effects are the requests offered by the defendant company, which were refused by the court. The question now is, Is there any error in that?

Several cases have been cited on the part of the defendant in error bearing upon the claims which he made before the court below and the claim which he makes here, that such an agreement as testified to here by the parties was only an agreement to pay what the services were reasonably worth. On the other hand are a line of cases cited by the plaintiff in error, bearing upon the claim which it makes that the parties might contract that one or the other of them should determine the compensation. So far as the cases cited here by the attorney for the company are concerned, they bear mainly on contracts for purchases of machinery or improvements of machinery, where the courts have held that the contract amounted to leaving the property on trial, and the agreement was that if the party who purchased or who was making the agreement to purchase was satisfied with the article he should keep it; if he was not satisfied, he was not to keep it or pay for it, but was to return it. Those hardly come up to the agreement in the case at bar—a case where a person is employed to render a service, and the service is rendered exactly as it was contracted to be rendered, and

the employer has the benefit of that service. In such a case, can a contract be made that will authorize him to name the compensation? There are some decisions that that kind of a contract would not be enforced as a contract by the courts. Whether that be so or not, we take this view of this case: If such a contract could be enforced, plainly and clearly the party who claims the right to name the compensation must exercise that right at the time when it ought to have been exercised, to wit: in this case, at the conclusion of the services, if that was the agreement; and certainly, if not then, it must have been exercised when the employee or agent came to him to get his pay—came to him for his compensation. And it is conceded in the record that Lott did come to Ashley and made a claim, as the record shows, of $1,000. It is said that that was an offer of compromise. I don't care how it came to be made, it certainly gave to Mr. Ashley, who claims to be the arbiter under this contract, the opportunity to exercise his judgment and fix a price; and clearly he must have done it when such an opportunity was offered him. If this is not so he could delay and compel the plaintiff to await the time when he should see fit to exercise that judgment, and the plaintiff would have no right to bring a suit, because when he sues he must sue on the contract, if he sues at all. If Mr. Ashley can name the time, then he can postpone the time that the plaintiff might bring an action. No such contract as that would be reasonable. So it seems to us clearly that Mr. Ashley should have exercised his right under such contract, if he claims to have such a contract. On the contrary, he did not do that; he never named any price that he deemed reasonable, but insists that he might wait and refuse until he is brought into court, upon the witness stand, and then for the first time exercise that right to name the price which the plaintiff ought to take. A person's rights are not to be put in jeopardy in that manner. They cannot be held off and played with to that extent, and kept from enforcing them in the courts which are open for the prosecution of such claims, and for the collection of just such debts.

So it seems to us upon that ground the defendant below could not claim the right to offer in evidence Mr. Ashley's opinion on the trial, for the first time, the company when called upon not having exercised its right to name a price that it or Mr. Ashley should deem to be a fair and reasonable compensation.

This form of action, as it is stated in one of the cases cited, if it is ever brought at all, is brought for the recovery of compensation. In such a case it must be upon a *quantum meruit*, which, under the old forms of proceeding was known as an action of assumpsit; and in the case that is cited from Illinois, 38 Ill., 442, they say that such an action lies on an express or implied promise that the defendant will perform the terms of the contract, and the price to be paid is fixed and agreed upon by the parties; or, when the whole labor has been performed and the price to be paid is not fixed or agreed upon, the law determines that it was the implied agreement of the parties that it should be what the services were reasonably worth. Take it in this case: while an agreement might be made permitting the employer to say at the end of the time what the services were worth and to fix the price to be paid, that would govern, provided he exercised the right in good faith, which he must necessarily do; yet such an agreement could not be made and enforced if the employer failed or refused to fix the price at the time named in the contract, or when called upon to do it by the employee. The defendant failed to do that in this case and we do not consider that the court below committed any error in its rulings or charge.

The judgment is affirmed, without penalty.

*A. L. Smith*, Attorney for Plaintiff in Error.

*J. W. Cummings*, Attorney for Defendant in Error.